514

570 A.2d 1373

**Diane REYNOLDS and Rodney Reynolds, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF AGING, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Feb. 26, 1990.

516

John M. Lisko, Maxwell, Maxwell, Dick & Walsh, Waynesboro, for petitioners.

David R. Hoffman, Chief Counsel, for respondent.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Diane Reynolds (Mrs. Reynolds) and Rodney Reynolds (Mr. Reynolds) (collectively, Petitioners) appeal from an order of the Department of Aging (Department), which affirmed the Franklin County Area Agency on Aging's

(area agency) decertification of Petitioners' domiciliary care home (home).[1] We affirm.

Petitioners were certified to operate a home by the area agency. In September, 1986, Mr. Reynolds, while in an inebriated state, became involved in an altercation away from the home in a motel hallway. Shortly thereafter, J. Foster Stambach, unaware of the altercation, greeted Mr. Reynolds in the hallway. Mr. Reynolds seized Mr. Stambach, an 81 year old person, and dropped him from a second story balcony causing him serious bodily injury. On August 25, 1987, Mr. Reynolds was convicted of aggravated assault and recklessly endangering another person.

On August 1, 1988, the area agency informed Petitioners by letter that their home was decertified because Mr. Reynolds had been convicted of a crime involving assaultive behavior or moral turpitude.[2] Petitioners sought relief through the mandatory informal complaint process of 6 Pa.Code § 3.5, utilizing the Domiciliary Care Review Team, established by the area agency, which affirmed the decertification. Petitioners requested an informal investigation by the Department,[3] which also recommended decertification.

Petitioners filed a request for a formal hearing. The Secretary of the Department (Secretary) appointed a hearing examiner to preside over the hearing. A hearing was held, and the hearing examiner issued a proposed report, which concluded that because draft regulation 21.27(7) was not adopted at the time of the hearing, it was a nullity and could not form the basis for decertification of the home.

1. " 'Domiciliary care' is a protective living arrangement in the community which provides a safe, supportive, homelike residential setting for three or less adults who are unrelated to the domiciliary care provider, who cannot live independently in the community, and who are placed by an area agency." Section 2202–A of the Act of April 9, 1929, P.L. 177, *as amended,* added by Section 6 of the Act of June 20, 1978, P.L. 477, *as amended,* 71 P.S. § 581–2.

2. Exhibit 3, at 5. The letter stated Petitioners violated draft regulation 21.26(7), which was a proposed regulation published for comment but not adopted during the time period relevant to this case. From the quoted language of the letter, it would appear that the area agency was referring to proposed regulation 21.27(b)(7). Exhibit 2, at 27.

3. The investigation was conducted according to 6 Pa.Code § 3.5(e)(1).

The hearing officer recommended reversal of the decertification of the home but recommended revocation of Mr. Reynolds' privilege to operate the home.

Pursuant to the mandatory provision of 6 Pa.Code § 3.11, the Secretary reviewed the proposed report and issued a formal opinion and order, adopting the hearing officer's conclusion that the draft regulation did not have the force of law, but finding the proposed regulation instructive as Department policy. The Secretary concluded that the Petitioners were on notice that the area agency had the power to decertify the home if it found that the provider or the home could no longer provide a safe family setting. The Secretary determined that Mr. Reynolds' presence was a threat to the residents of the home, affirmed the area agency's decertification of the home and revoked Mr. Reynolds' privilege to operate a home.

■ On appeal to this court,[4] Petitioners raise the following issues: (1) whether the area agency waived the objections to the reversal of the decertification of the home by not appealing within 30 days from the proposed report of the hearing officer; (2) whether Petitioners' due process rights were violated because the grounds underlying the Secretary's decision to affirm the decertification were first raised after the formal hearing; (3) whether sufficient grounds exist for decertification; (4) whether Mrs. Reynolds has a property interest in the operation of the home which protects the home from decertification; (5) whether the Secretary improperly relied on draft regulations which had not been promulgated; and (6) whether Mr. Reynolds' conduct can be the basis for decertification.

As to the first issue, Petitioners cite a general procedural provision for administrative appeals, 1 Pa.Code § 35.211, which provides that a party to a formal proceeding must file exceptions to a proposed report to preserve issues for

4. Our scope of review of administrative agency decisions is limited to a determination of whether an error of law has been committed, whether constitutional rights have been violated and whether findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

review by a department head. Petitioners argue that because the area agency did not file exceptions to the proposed report, which reversed the decertification, any objections to the reversal of the decertification are waived.

■ The general provisions for formal administrative proceedings are not applicable to a proceeding before an agency to the extent that the agency has promulgated more specific inconsistent regulations on the same subject. 1 Pa.Code § 31.1(c). The regulations of the Department state that the hearing officer shall issue only a recommendation as to the correct result and all recommendations must be reviewed by the Secretary or a designee. 6 Pa.Code §§ 3.10–3.11. Findings of fact are subject to review and reversal by the Secretary, who shall issue an opinion and order. This mandatory and broad power of the Secretary to review and reverse proposed reports under the Department regulations is inconsistent with the general provision regarding preservation of issues. Therefore, the general provision cited by Petitioners is inapplicable.

■ As to the second issue, Petitioners state that at the time of the hearing they were on notice only that their home was to be decertified because of a violation under draft regulation 21.27(7). They argue that the Secretary violated their due process rights by giving a new reason for decertification of their home, namely lack of a safe family setting, without giving them notice or an opportunity to challenge this new reason.

■ Due process of law is afforded when the "accused" is informed with reasonable certainty of the nature of the accusations lodged against him. *Speare v. Pennsylvania Human Relations Commission*, 16 Pa.Commonwealth Ct. 502, 328 A.2d 570 (1974). The sole reason for decertification of the home was Mr. Reynolds' conviction for assault and reckless endangerment, and the consequent concern of the area agency for the safety of persons it has placed in a home where Mr. Reynolds resides. Petitioners did not dispute that Mr. Reynolds had been convicted. The bulk of

Petitioners' witnesses' testimony at the hearing was offered to prove that Mr. Reynolds was not a threat to the safety of the residents. We conclude that Petitioners were sufficiently warned of the nature of the reason for decertification and accordingly were not deprived of their due process rights.

■ On the third issue, as to whether sufficient grounds for decertification exist, Petitioners argue that Mr. Reynolds is not a threat to the safety of the residents. Petitioners contend that their evidence refutes the Secretary's finding that there is a "potential for violence to the clients so long as Mr. Reynolds remains situated in the same residence." [5]

The Secretary is the fact finder in formal proceedings before the Department.[6] The Secretary found that the violence Mr. Reynolds exhibited against Mr. Stambach was so reprehensible that there is a continued threat of violence to the residents, while he remains in the home. Given the undisputed facts surrounding the event in question, the seriousness of the violence perpetrated by Mr. Reynolds and the fact that his victim was elderly, we conclude that this single event is substantial evidence to support the Secretary's finding that Mr. Reynolds' presence in the home constitutes a continued threat of violence to the residents.

■ The Petitioners contend further that there is no statutory basis for the action of the Secretary. We note that the Department has the power and the duty to administer and supervise the domiciliary care program for adults.[7] In exercising this power, the Department must insure that the program complies with the area agency's obligation to protect the health, safety and welfare of older persons and adults who lack the capacity to protect themselves.[8] Upon finding that residents of Petitioners' home were exposed to

5. Opinion of the Secretary, exhibit 8 at 7.

6. 6 Pa.Code § 3.11(c).

7. Section 2203–A of the Act of April 29, 1929, P.L. 177, *as amended,* added by Section 6 of the Act of June 20, 1978, P.L. 477, *as amended,* 71 P.S. § 581–3.

8. 71 P.S. § 581–7(a.1)(7)

a threat of violence, the Secretary acted within her authority by affirming the home's decertification in the interest of the residents' safety.

■ As to the fourth issue, the protected property interest argument, Petitioners assert that Mrs. Reynolds has a protected interest in operating the home, which prohibits decertification of the home without a compelling reason. Petitioners argue that the Secretary found no such compelling reason. We disagree. The Secretary decertified the home to protect from a potential threat of violence the aging and dependent adults who reside in the home. Regardless of whether Mrs. Reynolds has a protected property interest, we conclude that the Secretary had a compelling reason to decertify the home.

■ As to the fifth issue, the draft regulation issue, Petitioners contend that the draft regulation cited in the area agency's notice of decertification is a nullity and that the Secretary's reference to this regulation in her opinion is grounds for reversal. The Secretary was motivated by a compelling reason, the health, safety and welfare of the residents. The existence or non-existence of a regulation is not definitive of the Secretary's power to decertify a home where the reason is compelling and the findings are supported by the evidence. The draft regulation is merely indicia of Department policy.

■ As to the final issue, Petitioners assert that because Mr. Reynolds' signature does not appear on a Domiciliary Care Placement Agency—Provider Agreement that he is not a care provider in the decertified home. Petitioners argue that because Mr. Reynolds is not a "provider" his conduct cannot be the basis of decertification.

The Department argues that Mr. Reynolds' interaction with residents and his supervision of the home is sufficient evidence that he is in fact a provider, whose conduct is relevant to decertification. The relevancy of Mr. Reynolds' actions are not derived solely from his status in the home, but also from his presence there and his threat to the home

residents. After exhaustive review of the record, we conclude that Mr. Reynolds' interaction with and intermittent supervision of residents makes his potential threat to those same residents a proper basis for decertification of the home.

Accordingly, we affirm.

## ORDER

AND NOW February 26, 1990, the order of the Department of Aging in the above-captioned matter is affirmed.